Where the lawyers are going to argue this case, step up to the podium just briefly please. And state your names for the record. And you probably both know this, but this microphone does not amplify you, it only records you, so keep your voices up nice and loud please. And would the appellant like to reserve any of their 20 minutes for rebuttal? Yes, just about 5 minutes for rebuttal please, Your Honor. Okay, you may sit down and you may proceed. Could I get your name again please? Therese Bissell. Thank you. Good afternoon, Your Honors. May it please the Court, Counsel. I'm going to focus on Argument 1, the Bruton Violation, and Argument 2, dealing with how aggravated kidnapping is incidental to attempt armed robbery. If Your Honors have questions on other arguments, I am happy and ready to discuss those as well. The prosecution may not use against a defendant the statements of a non-testifying co-defendant that implicate the defendant. Such testimony deprives the defendant of his right to confront and cross-examine his accusers. But that is what happened here. A severance was granted and there were severed but simultaneous bench trials for Mr. Hall and Co-Defendant Winfield. However, at trial, Detective Green testified about his interview with Co-Defendant Winfield, who gave a statement about how he and Hall planned and attempted to rob the T-Mobile store. While Hall testified and denied being involved in the attempt armed robbery, Co-Defendant Winfield did not testify. And the introduction of his statement, naming Hall and describing how Hall was involved in the offense, is the type of statement that is forbidden under Bruton. Was there any objection made by Mr. Hall's attorney with respect to the testimony about the statement of his co-defendant? It was simultaneous bench trial. There was no objection. Well, then doesn't it sort of indicate that everybody knew that this testimony was coming in with respect to the applicable defendants? That a judge is presumed to know that I'm going to only consider this against the co-defendant or the other co-defendant? Well, I think that presumption is rebutted here. Because you do have in the finding of guilty where the court stated that when he was going through the credibility of the eyewitnesses, and he concluded that the defendants' statements, so plural, that those corroborated the eyewitnesses' testimony. Okay. And in fact, Mr. Hall also made a statement, an incriminating statement, when he did. He did. But I think that that actually makes the co-defendant's statement prejudicial. Because? Well, if the co-defendant's statement was different, then there really wouldn't be any prejudice here. But the fact that the co-defendant's statement was the same, that's what makes it prejudicial against the defendant. Why is it not harmless error? It's not harmless error here because, again, just to kind of further up on that, it's prejudicial because Mr. Hall here denied making the statement. He denied being involved. And so the co-defendant's statement, which is similar to his own statement, that is hurting Mr. Hall because that's corroborating his own statement. And also we have, as far as harmless error, it's not harmless error here because the eyewitness, it was basically a case based on eyewitness identification. So the eyewitnesses were very important. And the court referred to these defendants' statements in finding the eyewitnesses credible. I think the problem, though, is that when I read it, I saw both interpretations here. This was not in writing. The court was speaking. It's oral. The court interpreted with defendants with an S and no apostrophe. And the court could have very well been saying the defendant's statement as in giving the defendant ownership of the statement. And when I read it, I saw that that couldn't have been the case and that the judge didn't necessarily refer to the statements made by both defendants. If the judge said that, then it would be clear. But I just don't think it's clear. I'm not saying what it was because I wasn't there and I've read it just like you've read it. And the way the court reporter interpreted it, the court reporter wrote it as if the judge was referring to multiple defendants. But the judge could have very well been using ownership. And in speaking, there's no way to tell. I would just emphasize that, again, he said defendants plural and statements plural. So there's plural for both defendants and statements. That's another way to look at it. Yes. Yes. Yes. And also just going through with the trial judge here as well, the case of People v. Schmidt, I think, in the Illinois Supreme Court, they emphasized that it's important for the trial judge to be clear and to separate when you have these severed but simultaneous bench trials, to separate. And in that case, they clearly said that he wasn't going to use the co-defendant statement against the defendant. And it's not so here. We didn't – the judge did not – the judge was not clear and did not parcel out the evidence. I'm not rolling my eyes at you. I'm rolling my eyes at the notion of simultaneous bench trials and somebody being able really to clearly do that. And I think that that's what – But there was no objection to that. There was no objection. Yes. But I believe that this is, you know, a very important constitutional right. I believe the State, in their brief, acknowledged that it's not something that – But they say he didn't forfeit it. Yeah, but it's not forfeited. And you can still – and I think as plain error is also applicable here under both prongs. Well, if your position is correct, then defense lawyers can set up a trial judge all the time by agreeing to simultaneous bench trials on multiple defendant cases, basically sit there without raising any objection, allow two different statements or three different statements of defendants to come in and wait to the end and say, you know what, my constitutional – my client's constitutional rights have been abridged because you listened to all these different statements of all these other defendants pointing fingers at each other and making admissions. Therefore, what? Give me a new trial or reverse my convictions? I mean, it just defies common sense that lawyers intentionally do that. They agreed to have a simultaneous bench trial out of a judgment that they made as to the nature of the case and the evidence and the situation involved and the judge involved. And I'm sure they didn't do it because they were – felt that they were going to have a judge that was going to bury them as soon as he heard something. You know, it just seems eminently specious to be raising that argument in a case like this where the judge's comments – I agree with Justice Walker. I read it to say that collectively I've listened to this. Both of them made statements. Both of them put themselves on the scene. Both of them participated in this event, you know. And the witnesses testified consistently with what both of them said in their own separate statements. I mean, that's the way I took what he was saying. I think my response to that would be the case of Schmidt and how the Illinois Supreme Court really focuses on how the judge should be clear and parcel out the evidence. And the onus is on the judge to very clearly say, you know, in that case there was a lot of discussion about how he was not going to – how he specifically said he was, you know, not going to use the co-defendant's statements against the defendant. And I think that's something that, you know, the trial judge in this – the trial judge should clarify and should be clear and parcel out the evidence against each co-defendant. Do you want to address the kidnapping? Sure, sure. If there are no further questions on Argument 1, I would like to proceed to Argument 2. And I actually have two issues of the kidnapping. One is the separate crime. You made that argument. But you also made an argument that the discharge of the weapon was really not part of the kidnapping. Okay. I think I'd like you to address both. Okay. Sure. Sure. First of all, the movement of the store employees, which formed the basis of the aggravated kidnapping, was incidental to the attempt on robbery here. An aggravated – the aggravated kidnapping conviction should be vacated. The four factors of the Levy-Lombardi Doctrine show – The aggravated conviction for discharging a weapon. Well, the aggravated kidnapping here. I think the second part is the aggravated kidnapping with the personal discharge. Well, you got indicted under A6 and A7, right? Okay. One was carrying a weapon, or multiple counts of carrying a weapon and multiple counts of discharging it during the kidnapping. Yes. Right? Yes, yes. And what happened to the carrying the weapon counts? Are those the ones that were, quote, vacated? I believe they were. I believe it's because of the one-act-one crime. Yes, yes. Well, that's what – well, go ahead. Go ahead with your inquiry. And I would just point out the indictment here for the attempt on robbery specifically says that they took the two store employees to the back of the store. So the indictment itself with the attempt on robbery includes the movement of the employees to the back. So we have the four factors of the Levy-Lombardi Doctrine, which show that the aggravated kidnapping was incidental to the attempt on robbery. So first we have the duration of the detention. It was a very short period here. There was not a lot of details as far as specific time. I think one of the witnesses estimated that the entire offense took about one minute. But all the evidence indicates that everything happened very quickly. So it was a short duration of the detention. The detention, the movement also occurred during the offense of the attempt on robbery. There was no evidence of any independent purpose to move them. It's just one continuing robbery here. The defendants, there were statements made about wanting to get to the safe, and the safe was in the back of the room, and that's where they wanted to get. And, again, that kind of ties into the third factor, the detention and the movement of the employees was inherent in the attempt on robbery. How is it inherent in the armed robbery? Sure. Well, I think, first of all, I think, again, the indictment, the way that it was charged, the way that attempt on robbery was charged, is it specifically said that Hall, with the intent to commit armed robbery, announced a robbery and took the employees to the back. So as far as inherent, I think it was necessary. It was essential to effectuate the attempt on robbery to get to the back, where the safe was located. And the movement was too – Well, wouldn't the attempted armed robbery have been committed at the moment he pulled out the gun and said, get to the back? I mean, he didn't have to physically be in the back room where the safe was with all these cell phones. Well, I think that's where they were – that's where they wanted to go. Yeah, but this is an attempt on robbery. Because they were not able to complete the robbery because the officer was there. Okay. Yeah. And I think this is how retail stores work. You know, yes, there are a few – there's limited amounts of money in the cash registers, in the showroom, limited phones. But all the evidence indicates that they wanted to get to the safe. That, you know, in retail stores, the large amounts of money, the large amounts of product – if you go to a cell phone store to get a phone, you always have to go to the back. That's where all of those things are kept. There was no indication that they were really interested in taking the product that was out in the showroom. All the evidence indicates that they wanted to get to the safe and wanted to get to the, I guess, more major amounts of money that were kept in the back. And also, the fourth factor is whether or not – the movement or the aspiration did not create a significant danger to the victims independent of that posed by the attempt on robbery. And the gun presence here is really what was the danger here. So the gun presence is no more dangerous in the back than it was in the front showroom. So the four factors show that the movement of the employees was incidental to the attempt on robbery. And I'll also – if Your Honors have no further questions as to that statement. I don't – just briefly, couldn't he – couldn't the armed robbery have been accomplished by coming in – attempt on robbery – coming into the store and saying, I want all your phones and money. Go get them and bring them to me. I have a gun. There's no need to move the employees to the back where no one can see them. And they can just – I think that was necessary to get there because they wanted to make sure that they got to the safe and took what they wanted to get. I think there was some indication that Hall was wanting to get the money and Co-Defendant Winfield was wanting to get phones to be able to sell. Okay. So I think there's limited things out, you know, out in the showroom. They don't really know who was able to, you know, open the safe. So they – it was essential that they get to the safe, which was in the back room, in order to get to – order to get what they were attempting to get. Okay. And the discharge of the gun? Sure, Your Honors. Here he was charged with aggravated kidnapping and that during the commission of the kidnapping, he personally discharged a firearm. So under the plain meaning of that language here, the firearm was not discharged during the commission of the kidnapping. The kidnapping was complete. And the defendant was already out, had run and run out into the showroom before firing the weapon. There was no kidnapping. This is an alternative. I apologize, Your Honor. An alternative argument. An alternative argument. In the alternative. In the alternative, yes. So he was not effectuating his escape. The kidnapping was already completed and the gun was not fired until that personal discharge add-on here. The evidence does not show that Hall fired his gun as part of that escape. But the kidnapping was complete before the weapon was fired. The gun fired after it hit the ground, didn't it? I'm not sure. Not sure. Not sure. The gun and all of the gun was found at like the store. In the store. In the store by like the front vestibule, I believe. Well, the distinction in those cases is that if the gun was discharged during the armed robbery, there's a 20-year add-on. Yes. However, if a gun is possessed during the kidnapping, there's a 15-year add-on, correct? Yes, during the kidnapping, I believe. Yes. Right. Yes. Okay. Now, that gets to my question. I'm confused as to what happened to the possession of the weapon during the kidnapping accounts. Okay. There are terms being thrown around like vacated, but I haven't seen any merger. So my question is, did the trial court vacate a conviction that he entered and that was entered on the possession of a weapon during an armed robbery? Because it would seem to me that if he vacated that, it's the equivalent of a not guilty on those counts. Yes. I believe he did. He did what? I believe he vacated those. Okay. And is it your contention that he vacated those counts and therefore found the defendant not guilty of those counts upon vacation? I suppose if that is your interpretation of it. No, I'm asking your interpretation. Yes. Honestly, I do not have that in front of me at the moment. Okay. Let me ask this question. Sure. If one were to conclude that the weapon was not fired during the kidnapping. Yes. Then he was improperly convicted of that count. Yes. On the counts, correct? Yes. Would you agree that the lesser included offense of that charge is having the weapon in the first place, whether it was fired or not? Yes, I suppose I would have to. It sort of sounds like it, doesn't it? Yes, if he has possession of it. Perhaps an unfair question to you to concede, but it does sound like it's a lesser included offense of having a weapon, discharging a weapon during a kidnapping. It seems to be that the weapon is not discharged and that's not proven that the lesser included offense of that charge is having the weapon during the kidnapping. You may stand and move. I'm sorry, Your Honor. That's okay. Did I throw you off? Do you have anything else you want to add? If there are no further questions on this argument, Your Honors, I will just conclude by asking you to reverse his convictions pursuant to Argument 1 and then re-vacate his conviction. I guess just to follow up on Justice Pierce's question, if we were to find that the evidence did not sustain the conviction for aggravated kidnapping based on discharging a weapon, would there be any reason we could not remand for sentencing for aggravated kidnapping based on possession of the weapon, the conviction that was vacant? Is there any reason that we couldn't remand for sentencing on that? No, I don't believe that there is. Thank you, Your Honor. Thank you. Good afternoon. May it please the Court, Assistant State's Attorney Noah Montague, on behalf of the people in this matter. Your Honors, this matter comes before the Court after this defendant was convicted of aggravated kidnapping, armed habitual criminal, attempt on robbery, and aggravated assault based on events which occurred on August 2, 2010. Just to jump ahead and clear up one issue, the record, the people's recollection of the record, indicates that the defendant was found guilty of four counts of aggravated kidnapping, which seems to indicate that he was found guilty of not just discharging the weapon, but also firing. I believe those were vacated. Okay. The two of possession were vacated. Okay. I believe. I think the record's pretty clear. Okay. Your Honors, the... But if you have some different belief, then you should, obviously, with notice to counsel, let us know. Okay. The evidence in this case was overwhelming. This defendant was a witness to come into the store, hold a gun on one employee, tell that employee to go to the back, encounter another employee, tell that employee to go to the back, take these employees into the back room of the store where a police officer was. A police officer yelled, police. The defendant pointed his gun at the police officer. The police officer opened fire. The defendant ran out of the back room. The police officer fired into the main public area of the store, actually shattered the glass of the door and hit the co-defendant in the hand. And at that point, the defendant stopped, turned around, and pointed his gun at the officer, who then was still standing by the back door to the back room and allowed the metal door to close and then heard two shots fired. And the defendant dropped his gun and left the store. This was witnessed by four eyewitnesses who identified the defendant, including the officer. The defendant was arrested shortly thereafter and confessed three different times, once to the arresting officer, once to the detective, and once to an assistant state's attorney about his involvement in these events. And this was significantly corroborated by the physical evidence at the scene of the crime where, obviously, the glass door was shattered, the gun was found. Notably, the gun was found with one of the cartridge cases jammed in the gun. The other one was found on the floor nearby. One bullet from the gun was found whole somewhere on the floor and another bullet fragment from the gun was found also on the floor. So there was very clearly established by the physical evidence that two shots were fired. This was a joint but severed trial, a bench trial in front of a circuit court judge, and at the conclusion of which the judge issued a general statement discussing both cases, which the people have included in their brief so the court can see it in full context. In that statement, the court said that the case was remarkable because, in effect, there were no major contradictions in the case. The eyewitness testimony, the physical evidence, and the defendant's statements all corroborated each other. But that general statement, however it's interpreted, is not at all an explicit statement that I am finding Defendant 1 guilty because of what Defendant 2 said or Defendant 2 guilty because of what Defendant 1 said. The court is simply saying that all the evidence heard in both cases all fits together and all corroborates each other, which was remarkable to the court because, in most cases, there are contradictions. Witnesses remember things differently. The physical evidence doesn't quite fit. In this case, the court thought it remarkable how well everything fit together. But what the court did thereafter is most relevant to the Bruton allegation here because immediately after the statement, the court went through and made an itemized finding for each charge against this defendant. And the first thing the court did was to say, I'm finding you not guilty of aggravated discharge. So the court, in that generalized statement, wasn't then finding this defendant guilty. The court was just making a statement, an observation about the evidence in both cases. And then the court went through, just as is pointed out by People v. Schmidt, where the court said that Illinois Supreme Court said it would be helpful if circuit court judges would go through and give their reasoning for each finding. Well, the court here did exactly that. The court did exactly what the Illinois Supreme Court asked it to do. The court went through each verdict and said, here's the evidence and here's my finding. But the court never said, and very easily could have said, I am not going to consider Mr. Winfield's statement in assessing the evidence against Mr. Hall. That's correct. But the court also never said, I am considering the opposite. And here, in a bench trial, where you have to go through. The evidence as to each count. Right. The court laid out the evidence and then went count by count. True. But the court, in going count by count, laid out its reasoning and why it was finding the defendant guilty. It wasn't simply a list and saying, here's this count of finding guilty. I understand. The court did give its reason. Now, even if there was a proven violation in this case, the evidence is overwhelmed. Four eyewitnesses testified to this defendant's actions. This defendant confessed to his action three times, and the fiscal evidence fully corroborates all that testimony. So any proven violation in this case would necessarily be harmless beyond a reasonable doubt. As to Issue 2, the aggravated kidnapping, as an initial matter, the people would note that this defendant has argued that this is subject to de novo review. The people maintain that this is not subject to de novo review. The Illinois Supreme Court, in the case of, I'm probably going to mispronounce the name, but People v. Seguenza-Britto, not too long ago, I believe it was 2009, had a similar case that brought up a Levi-Lombardi issue that went through the four Smith factors and that considered whether or not the kidnapping in that case was incidental to another offense. And in reviewing that case, the court applied the very familiar reasonable doubt standard from Jackson v. Virginia, which is whether any rational prior effect could view in the light the most favorable to the people could have found the defendant guilty. And so that standard has been applied to this exact legal issue by the Supreme Court and the people. Kagan. What case is that, counsel? People v. Seguenza-Britto. It's said that... In your brief? Yes. Yeah. Okay. And in that case, in fact, if this Court were to look at the analysis in that case, it very clearly states that three of the four Smith factors at this point, as the way Illinois law has evolved since the Smith case, three of those four factors at this point are essentially elementary. There's really no contest anymore as to whether or not three of those four factors apply. Because if you look at what the Illinois Supreme Court said there, the first factor is the brevity of the movement or concealment. Well, the Court said that the brevity of the movement or concealment cannot prohibit a separate conviction for aggravated kidnapping. So the brevity, which in Smith, the victim was driven around for 20 or more minutes, and the Court found that to be very brief and in favor of not finding a separate kidnapping charge. Now the Illinois Supreme Court has said, and numerous cases in between, that brevity cannot prohibit finding a separate conviction for kidnapping. Similarly, while I believe it was People v. Young, a case that came after Smith, said that some manner of restraint is inherent in the case of sexual assault. That can no longer be found in cases where the Illinois Supreme Court, and many cases in between, have now declared that whether or not something is inherent in another offense, it only means is the element the same. Is that element of aspiratation or concealment in the other offense? And while I've been doing this for 15 years, and I probably should know the answer to this question conclusively, I cannot think of another offense as a prosecutor that involves aspiratation other than kidnapping. So if the offense is only inherent in some other offense, if the same element is over there, and kidnapping is the only offense that has aspiratation, certainly it's the only common offense that has it, there's not going to be many offenses that are going to be inherent, where kidnapping is going to be inherent in that other offense. And the same can be said now with danger, which is the fourth Smith factor. Because the Illinois Supreme Court, again, in su plenum frito, has said in many cases that it examined, have said this, that the act of taking a victim from a public place and concealing them in a more private place, a place that is separated from the public, is inherently dangerous. And seeing as though concealment is a necessary element of just about every kidnapping, there's always going to be a danger then in every kidnapping. Now, and this is also important to see when you look at some of the cases that support the defendant's case here, which is like Pupil v. Lamke. Because Lamke, this court ruled, actually, there was no kidnapping in that case because there was no concealment. So before this court considered the four Smith factors, this court had already found, well, there was no concealment. And that's interesting on this point, especially because the victim in Lamke, or the defendant in Lamke, actually stopped what he was doing to the victim because a person out on the street, like Humphrey Thorne, and yelled at the guy, and he left. That is what the court is talking about when there's inherent danger in taking someone away from the public and putting them in a place. And it's very clear that there was inherent danger here because these two defendants didn't know that there was a cop with an unholstered gun behind that door. So they didn't know what was going on in that room. So taking these victims, in this case, to that room presented an inherent danger to them. And one other point is that the people who cited the case from this court are People v. Quintana. People v. Quintana said that if you have three Smith factors in favor of your decision, in favor of finding a separate aggravated kidnapping offense, that is enough to support the offense. Because what the court found in Quintana was that the victim was pulled off of the street and into a van and immediately sexually assaulted, so that the aspiratation and the sexual assault were simultaneous. But what the court found was that while the other three factors fully support the separate offense and affirmed the separate conviction for aggravated kidnapping, and here, if you just look at Siguanza Burrito and apply that to the facts of this case, you very clearly, without question, have three factors in favor of finding a separate offense. As to the question of whether or not there was a discharge during the commission of defense, the People maintained that People v. Dennis, the case cited by both parties in this, is conclusive. Dennis very clearly says that if you fire a gun to effectuate your escape, that's part of the offense. And here, the fact that two shots were fired and that that is fully established by the physical evidence shows that this wasn't just he dropped the gun and the gun fired. At least one of those two had to have been him firing. And it's very clear that he was trying to effectuate his escape because not too far away from him was a police officer firing at him who only stopped when the defendant turned and pointed the gun at him. Well, he had the acquittal on the aggravated discharge, right? That's correct. And the acquittal on the attempt murders. That's correct. So there's, I assume, no convincing evidence about what he did with the gun. What the court found was that there was no convincing evidence that where he aimed. Okay. And so the court actually says... Or that he aimed it off. Right. That's correct. That's correct. I mean, he may have fired into the sky. He may have fired into the ceiling. He may have fired into the floor. But it is very clear that he was doing it to effectuate his escape. And it's clear in most parts just because he did effectuate his escape because... He escaped. He fired that gun. But it was a causal thing because the cop was coming after him and firing into the retail store. Well, the element of the statute is simply that the gun discharges during the aggravated kidnapping. That's correct. So it doesn't really matter whether he dropped it, aimed at the ceiling, aimed at his own head or anything. The gun went off. For the purpose of saying that it was during the commission of offense the people maintained that this was very clearly by the facts established... What I'm saying is you don't have to establish under the statute the pointing, aiming, intentional discharge rating. The fact that it discharged during the offense makes it aggravated. And the people also add that the fact that it discharged twice shows that it wasn't even an accident. At least one of the two had to have been purposeful. And... So is it a lesser included offense of... If one concluded that the discharge did not occur during the kidnapping and he was found guilty of that charge, correct? Is it a lesser included offense of that charge to be possessing a weapon during the kidnapping? Unless there's some way to say that you could discharge a gun without possessing it. It would have to be a lesser included offense. There's two charges, A6 and A7. A6 is possessing a weapon during a kidnapping and A7 is discharging a weapon during a kidnapping. If for some reason a judge found someone not guilty of discharging a weapon, wasn't convinced it was discharged, but that was the only charge, could the judge convict the defendant of the lesser included aggravated kidnapping charge of possessing the weapon during the kidnapping? Yes. I mean, the Illinois courts used the charging instrument approach and the only question would be does the charging instrument that has the personal discharge aggravated kidnapping with discharge of a weapon, would that describe the other offense? And it seems clear in the hypothetical that it would, yes. But obviously the people maintain that the defendant here did discharge the weapon. For those reasons and those stated in the people's brief, we'd ask that you affirm these convictions. Thank you, Your Honor. Thank you. Just a few points, Your Honor. As far as argument one, the Bruton violation, I just, again, wanted to emphasize that the court relied on these statements in finding the witnesses credible and that was crucial to the trial judge's finding of guilt here. As far as the aggravated kidnapping argument, we maintain that de novo review is appropriate here given that we are applying the law to undisputed facts. And even if there was more deferential review, the trial court's decision is not entirely conclusive and review courts must still examine the evidence to see if it's sufficient for finding of guilt. And again, we also maintain that all four of the Levy-Lombardi factors indicate that the aggravated kidnapping was incidental to the attempt armed robbery. And in particular, the fourth factor, the movement to the back didn't create any significant danger to the victims independent of what was already a dangerous situation. The gun presence was really what caught, the presence of the gun here is what makes the situation dangerous and that gun presence was no more dangerous in the back room as it was in the front showroom. Is there no further questions, Your Honor? Thank you, Your Honors. Thank you. Thank you. We will take the matter under advisement. Thank you both for, thank you.